UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JERRY JOE BATT | ) | Case No. 10-30310 |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| JULIE APPERSON, as Trustee for the | ) | |
| Estate of Jerry Joe Batt, and as successor | ) | |
| Trustee for Jerry J. Batt Revocable Trust | ) | |
| And Jerry J. Batt Amended Revocable Trust | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | AP No. 12-3009 |
| SCOTT BLECKNER | ) | |
| | ) | |
| And | ) | |
| | ) | |
| SCOTT SAVAGE TRUST | ) | |
| | ) | |
| And | ) | |
| | ) | |
| PETER PILLIOD TRUST #031001 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JOHN E. HUTCHINS | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JASON E. MASON | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM**

This adversary proceeding comes before the Court on the Motion to Dismiss for Lack of

Subject Matter Jurisdiction filed by the Defendants Scott J. Savage Revocable Living Trust and

Peter P. Pilliod Revocable Living Trust (collectively the "Trusts"). The Plaintiff, Chapter 7 Trustee

Julie Apperson, filed a response in opposition to the motion to dismiss. Upon consideration of the

motion, the response, and the record in this case, the Court grants the motion to dismiss.

## I.    FACTS

The facts set forth in this decision are based upon the Complaint and, for purposes of this decision, are accepted as true.  See Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir.2008).

The Debtor and the Defendants are or were a member of an entity called the Timberstone Retail Group LLC ("Timberstone").  The Timberstone Retail Group, LLC Operating Agreement ("Operating Agreement") provides that Timberstone shall indemnify any Members that have to pay as a result of their status as a guarantor.  See Subparagraph (a)( and (b) of the Operating Agreement attached as an exhibit to the motion to dismiss and incorporated by reference herein.  The Operating Agreement also provides that in the event that Timberstone does not indemnify a Paying Member in full, the other Members shall pay to the Paying Member the amount of their pro rata share.

The Debtor filed a petition for Chapter 7 bankruptcy relief on January 25, 2010.  Fifth Third Bank ("Fifth Third") filed a Proof of Claim (Claim #10) in the claims register for the Debtor's bankruptcy estate on June 18, 2010, in the amount of $3,043,249.10, seeking payment on the Debtor's guarantee arising from a loan made to Timberstone.

The Trustee filed this adversary proceeding against the Defendants seeking contractual indemnification for any amount that the Debtor "will or may be obligated to [pay] Fifth Third Bank in accordance with Proof of Claim Number 10."  Count One of the complaint provides that to "the extent that [the Debtor] pays on his guarantee, [Timberstone] will not indemnify him as required by the Operating Agreement."

## II.    POSITIONS OF THE PARTIES

In the Motion to Dismiss, the Trusts move to dismiss the Complaint based on Federal Rule

2

of Civil Procedure 12(b)(1) made applicable to this proceeding by Bankruptcy Rule 7012(b). The Trusts argue that this complaint should be dismissed because the Trustee's claims are not ripe for adjudication. Specifically, the Trusts argue that because the Debtor does not qualify as a "Paying Member" under the Operating Agreement, the Trustee's claims against the Trusts for indemnification are not ripe for review. The Trusts assert that, as an initial matter, neither the Debtor nor the Trustee have given any notice to Timberstone that any monies were paid to Fifth Third, and the Complaint contained no such allegation. Moreover, the Trusts argue the Debtor has yet to make any payments to Fifth Third on his guarantee arising from the loan made to Timberstone.

In her response, the Trustee raises three main points. First, she contends that the Rules of Civil Procedure allow her to bring a claim for indemnity even before she has made a payment to Fifth Third. Second, she states that the Operating Agreement and Ohio law allow the Debtor to bring an indemnity claim before making a payment to Fifth Third. Finally, she claims that the Debtor made pre-petition payments to Fifth Third.

## III.    LEGAL ANALYSIS

### A. Jurisdiction

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (O).

### B. Standard For A Motion to Dismiss Under FRCP 12(b)(1)

A motion to dismiss under Fed. R. Bankr. P. 12(b)(1) challenges the court's subject matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for

jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exits." DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir.2004), citing, RMI Titanium Co. v. Westinghouse Elec. Corp., 78 F.3d 1125, 1133–35 (6th Cir.1996). In this proceeding, the Trusts attacks the factual basis for jurisdiction, arguing the Trustee's claims are not ripe for adjudication. Therefore, the Trustee has the burden of proving jurisdiction.

As noted above, a motion to dismiss pursuant to Fed. R. Bankr. P. 12(b)(1) for lack of subject matter jurisdiction may refer to the evidence without converting the motion into one for summary judgment. League of Women Voters v. Brunner, 548 F.3d 463, 475, fn. 15 (6th Cir.2008) (internal citation omitted). In addition, on a Fed. R. Bankr. P. 12(b)(1) motion, the court is empowered to resolve factual disputes. Ernst v. Rising, 427 F.3d 351, 372 (6th Cir.2005), citing Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir.1986) ("[W]here subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the plaintiff has the burden of proving jurisdiction in order to survive the motion. Perhaps even more importantly, when a Rule 12(b)(6) motion is converted to a Rule 56 motion for summary judgment, the court, upon finding genuine issues as to material facts, must deny the motion; whereas on a Rule 12(b)(1) challenge to subject matter jurisdiction, the court is empowered to resolve factual disputes.").

The Court will first address the Trustee's responses. First, the Trustee contends that the Rules of Procedure allow the her to bring this claim for indemnity before making a payment to Fifth Third. Citing New Market Acquisitions, LTD. v. Powerhouse Gym, 154 F.Supp. 1213 (S.D. Ohio 2001), the Trustee contends that under Ohio law, indemnification may be brought before payment has been made, despite the fact that the indemnification claims do not accrue until the payment has been made. That court relied upon Fed. R. Civ. P. 14(a) to hold that the suit may be brought against

a third-party defendant who "may be liable." Bankruptcy Procedure Rule 14(a) is identical to Civil Procedure Rule 14(a), and that Rule concerns the application of third-party practice in civil litigation. The Trustee here argues that this case is equivalent to third-party practice as the Trusts are the "functional equivalent" of third-party defendants. The Trustee reasons that the Proof of Claim filed by Fifth Third is the "direct action" against the Debtor and this indemnity adversary proceeding is akin to a third-party complaint. The Trustee cites no law in support of her argument that Rule 14(a) may be used in this manner. The Court was unable to locate a case where Rule 14(a) could be implicated by a proof of claim and a subsequent adversary proceeding. In the absence of some authority for this approach, the Court is not inclined to stretch Rule 14(a) to the parameters suggested by the Trustee. Fifth Third's proof of claim is not a "direct action" but instead simply a proof of claim, subject to its own limitations, i.e., objections. Moreover, the proof of claim is filed in the main case, while this is a separate adversary proceeding. The Court does not believe Rule 14(a) was intended to stretch pleading practice out to encompass both main case and adversary proceeding matters.

Next, the Trustee states that the Operating Agreement and Ohio law allow the Debtor to bring an indemnity claim before making a payment to Fifth Third. The Trustee points out that the Operating Agreement includes "pay" language as well as "indemnify" language. She contends that under Ohio Law, rights to payment, unlike regular indemnification claims, may be pursued even if the Debtor has suffered no loss. The Trustee cites <u>Dana Corp. v. Celotex Asbestos Settlement Trust</u>, 251 F.3d 1107 (6th Cir. 2001) in support of her argument. That case held "[if] an agreement is to simply indemnify, and nothing more, then damage must be shown before the indemnitee is entitled to recover. On the other hand, however, if there is an agreement to stand for a debt or to pay a sum

certain, then it is no defense that the indemnitee has suffered no loss." Id. at 1116 (quoting In re Highland Group, Inc., 136 B.R. 475, 478 (Bankr. N.D. Ohio 1992).

The Trustee notes that Subparagraph (a) of the Operating Agreement gives the Debtor a right to "indemnification" against Timberstone. Subparagraph (b) of the Operating Agreement is drafted differently. The Trustee asserts that Subparagraph (b) does not include the term indemnify, but instead states the Trusts are obligated to "pay" the Debtor.

The Court must admit it is somewhat confused by this argument. Subparagraph b provides as follows:

> (b) If the [Timberstone] Company does not indemnify a Paying Member in full as required under sub-paragraph (a) of this Section 10.6, every other Member shall pay to the Paying Member the amount of such Member's "Pro-Rata Share" of the portion of the Company Liability Payment not covered by the Company ..."

Subparagraph (b) (emphasis added). To the contrary of the Trustee's argument, Subparagraph (b) expressly uses the term indemnify. While Ohio law may recognize a separate "pay" cause of action, as opposed to a normal indemnification action, this Operating Agreement authorized indemnification. The Court can not find language in the Operating Agreement which would authorize the Debtor, nor a Trustee standing in the shoes of the Debtor, to make a claim for indemnification prior to suffering any loss.

Finally, the Trustee contends that the Debtor made pre-petition payments to Fifth Third in partial satisfaction of Fifth Third's debt. Specifically, the Trustee contends that Fifth Third repossessed the Debtor's vehicle in 2009, prior to the filing of the case. Assuming for the sake of argument that this contention is correct, the Trustee is still not entitled to seek indemnification under the Operating Agreement. As claimed by the Trusts, and admitted by the Trustee, she has not made

a demand upon Timberstone seeking redress for any payments made by the Debtor on his guarantees. The Trustee contends that due to Timberstone's liquidation or pending liquidation, to require her to make demand upon Timberstone is to require her to "engage in a needless act of futility." The Court disagrees. While any such demand may not yield any results, the fact remains that the Operating Agreement required such demand be made prior to triggering any indemnification claim. Here, the demand was not made, and thus, the claims for indemnity are not yet ripe.

## IV.  CONCLUSION

In summary, the Court finds the Trustee's action against the Trusts is not yet ripe for adjudication. Moreover, the Trustee may not use Procedural Rule 14(a) to circumvent the ripeness argument. Rule 14(a) may not be used in the context of a proof of claim in the main case and a completely separate adversary proceeding. Furthermore, the language of the Operating Agreement expressly provides that other members will indemnify any Paying Member. The Court will not dissect this language into a separate "pay" action which would ignore the specific term "indemnify" as used in the Operating Agreement. Finally, assuming the Debtor has made some payment to Fifth Third as claimed by the Trustee, the Trustee admits she has not complied with the Operating Agreement. She has failed to make demand upon Timberstone, which would then trigger the indemnity clauses of the Operating Agreement. While such a request may indeed be futile, the Court will not ignore this component of the Operating Agreement.

The Court is simultaneously entering an order consistent with this decision dismissing the Complaint without prejudice.

Alan C. Stout
United States Bankruptcy Judge

Dated: January 10, 2013

7

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | |
| JERRY JOE BATT | ) | Case No. 10-30310 |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| JULIE APPERSON, as Trustee for the | ) | |
| Estate of Jerry Joe Batt, and as successor | ) | |
| Trustee for Jerry J. Batt Revocable Trust | ) | |
| And Jerry J. Batt Amended Revocable Trust | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | AP No. 12-3009 |
| SCOTT BLECKNER | ) | |
| | ) | |
| And | ) | |
| | ) | |
| SCOTT SAVAGE TRUST | ) | |
| | ) | |
| And | ) | |
| | ) | |
| PETER PILLIOD TRUST #031001 | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JOHN E. HUTCHINS | ) | |
| | ) | |
| And | ) | |
| | ) | |
| JASON E. MASON | ) | |
| | ) | |
| Defendants | ) | |

### ORDER OF DISMISSAL

Pursuant to the court's Memorandum entered this same date and incorporated herein by reference, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that the Motion to Dismiss filed by Defendants Scott J. Savage Revocable Living Trust and Peter P. Pilliod Revocable Living Trust is **GRANTED** this complaint is dismissed

without prejudice.

Alan C. Stout
United States Bankruptcy Judge

Dated: January 10, 2013